UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **EARL KING HARRISON** | **CIVIL ACTION NO. 3:12-cv-1813** |
| **VS.** | **SECTION P** |
| | **JUDGE DONALD E. WALTER** |
| **LARRY COX, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Earl King Harrison, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1942) on July 2, 2012. When he filed this complaint, plaintiff was detained at the Madison Parish Jail (MPJ), Tallulah, Louisiana. He sued Madison Parish Sheriff Larry Cox, MPJ Warden Tim Winstead, Dr. T.A. Neuman, Nurse Maxwell, Deputy Joseph Billiot, and food supervisor Frank Shelton seeking compensatory and punitive damages and an injunction directing the defendant Cox "to either fix or close the Madison Parish Jail..." In his original complaint he alleged that he was exposed to unsanitary conditions of confinement and inadequate medical care [Doc. 1] and thereafter he complained that he was denied access to the MPJ law library and that he was in need of law books to prepare his defense on pending criminal charges. He later complained that he was in need of a book to assist him in framing discovery requests with regard to the instant complaint. [Doc. 10]

On August 6, 2012, he advised the Court of his transfer to the Richland Parish Detention Center [RPDC], Rayville, Louisiana [Doc. 12]. On August 28, 2012, he filed a motion asking the Court to order Defendant Cox to transport plaintiff to the L.S.U. Medical Center for a physical examination. [Doc. 13] On September 11, 2012, he filed an amended complaint alleging that his

transfer to the prison in Rayville posed a hardship for his wife and that there were delays associated with the deposit of funds into his prison account; he complained that he was not properly treated for an infection for 10 days and he implied that his transfer to the new prison was in retaliation for filing this complaint. He also asked the court to order service of process so that he could proceed with discovery. [Doc. 14]

On September 27, 2012, the undersigned denied plaintiff's motion for physical examination and directed plaintiff to amend his complaint to provide specific facts in support of his conclusory allegations of fault. [Docs. 15 and 16] On October 2, 2012, plaintiff appealed the denial of his motion for physical examination [Doc. 18] and on October 15, 2012, he amended his complaint. [Doc. 21] On November 21, 2012, he notified the court that he was released from custody and provided his residential address. [Doc. 23]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted. It is further recommended that the appeal of the denial of plaintiff's motion for physical examination be **DENIED** as moot.

*Background*

In his original complaint plaintiff alleged that he was arrested and booked into the MPJ on May 1, 2012. He complained that his mattress was torn and that was issued only one sheet, one blanket, one large and one small towel and toothbrush and toothpaste. He complained that his clothes were taken and he was provided an orange prison jump suit; he was permitted to keep

2

his tennis shoes but his request for underwear and shower shoes were denied. He was instructed that he could request those items from his family. He was placed in a day room cell due to overcrowding. He complained that this cell contained no bunk and no shower but did have a toilet and sink with hot water. According to plaintiff, the windows were broken and there were gnats and other insects in the room. He complained that his cell contained no microwave oven and that the food was served lukewarm. Plaintiff washed himself in the sink basin for 7 days and then was permitted to take a shower. He ate cold or lukewarm food until May 14 when he was moved to another cell.

On May 2 he was examined by Nurse Obey; at that time he requested a special diet, eyeglasses and regular blood pressure and diabetes checks. On May 7 plaintiff experienced high blood pressure. He was provided medication and when his blood pressure was lowered he was returned to his cell. On the following day his request to have his blood pressure checked was ignored.

According to plaintiff, he was fed only beans, rice, white bread, and potatoes and that he was served milk served only one time per week. He was not provided fruit. He experienced episodes of high blood pressure on at least 3 other occasions. He complained that he was often constipated because he was not afforded sufficient outdoor exercise time. He complained about the conditions in the showers and the broken windows, the lack of security to monitor inmate activity, and the presence of snakes and lizards in the jail. [Doc. 1]

In his amended complaint filed on October 15, 2012, he again alleged that he was exposed to unsanitary and uncomfortable conditions of confinement – sleeping on the floor in an overcrowded jail; no hot food for two weeks; no shower for 7 days, no underwear or socks;

broken windows, and insect infestation. He also alleged that he refused appointment of counsel and when he requested access to the law library to prepare his defense, his request was denied. He also complained that he was denied dental treatment for a loose tooth and a broken tooth and that he was unable to see a physician concerning his blood pressure and diabetes. Plaintiff also claimed that he was not allowed to smoke and was not provided nicotine gum to aid in his withdrawal. He also complained that his face was infected and he was not allowed to see a physician, although he was provided medication. Plaintiff also alleged that his high blood pressure manifested itself in nose bleeds from time to time.

As noted above, he was transferred to RPDC on August 6, 2012. On November 20, 2012 plaintiff advised the Court of his release from custody and his return to a residential address in Tallulah. [Doc. 23]

In other pleadings, as noted above, he alleged that he was denied access to the courts because he had no access to law books to enable him to defend against pending criminal charges and he had no assistance in preparing discovery requests with regard to the instant suit. He also alleged that his transfer was an act of retaliation, however, he did not assert this claim in his amended complaint.

*Law and Analysis*

*1. Screening*

Plaintiff was a detainee when he experienced the conditions complained of. Nevertheless, a detainee is considered a prisoner pursuant to 28 U.S.C. §1915(h). When a prisoner or detainee is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate

the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).   A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 596 U.S. 662,  129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint outlining the broad contours of his claim; he was instructed to amend his complaint to provide more specific facts concerning the violation of his rights by each defendant. He was specifically directed to describe the prejudice, harm, or injury sustained as a result of the alleged violations. He submitted an amended complaint, along with other pleadings alleging the specifics of his complaints. Further amendment would serve no useful purpose.

## 2. Conditions of Confinement

Plaintiff complains of various conditions of confinement.  During the period in question, he was a pre-trial detainee and not a convicted inmate.  It has long been held that "... [t]he State's exercise of its power to hold detainees and prisoners ... brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638-39 (5th Cir.1996) (en banc) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Thus, a detainee's constitutional rights arise from "both the procedural and substantive

due process guarantees of the Fourteenth Amendment." *Hare,* at 639 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Due Process Clause of the Fourteenth prohibits the punitive confinement of a pretrial detainee since, by definition, the guilt of a detainee has not yet been adjudicated. *See Bell*, 441 U.S. at 535. Since plaintiff was a pretrial detainee, and since his allegations have been accepted as true for the purposes of this Report, the issue herein is whether or not the complained of acts or omissions of the defendants amounted to a violation of plaintiff's due process rights under the Fourteenth Amendment.

Under Fifth Circuit jurisprudence, in order to determine the standard of analysis for constitutional challenges brought by pretrial detainees under § 1983, courts are directed to first to classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare*, 74 F.3d at 644).   In a detainee suit challenging conditions of confinement, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  On the other hand,  an "episodic act or omission" case, complains of a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. A detainee who complains that an "episodic act or omission" resulted in an unconstitutional violation of a his Fourteenth Amendment rights is required to show that the officials acted with "deliberate indifference" to his health and safety. *Hare*, 74 F.3d at 647-48.

The plaintiff attacks the general conditions, practices, rules, or restrictions of pretrial confinement – overcrowding, and sanitation, clothing  and dietary related concerns. Therefore, the Court must apply the test announced by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520,

535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See *Hare,* 74 F.3d at 644. Under this test, the Court must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. The test requires a court to determine whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* (citing cases).

In order to determine whether the condition is a punishment, and therefore unconstitutional, the court must determine whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. If it is, the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* As is shown more fully below, none of plaintiff's conditions of confinement claims have been shown to be arbitrary or purposeless or unrelated to legitimate goals. At worst, plaintiff has been exposed to a various inconveniences and not punishment.

Plaintiff complained of over crowding. Of course, overcrowded conditions can, in some instances, be violative of the Constitution. *Bell*, 441 U.S. at 542, 99 S.Ct. at 1875. In order to determine whether "overcrowding" amounts to a constitutional violation, the court must examine "... the length of time an individual detainee must spend in a confined area both ultimately and on a daily basis, and the adequacy of the given sleeping space." See *id.* at 543, 99 S.Ct. at 1876. Here, plaintiff does not allege overcrowding sufficient to establish a Constitutional claim. Plaintiff was exposed to the complained of conditions for relatively short periods of time, and he

alleged no particular harm arising from those conditions.

Plaintiff also complained of dietary and sanitation concerns. He complained that food was served cold or lukewarm when he was first imprisoned. He also complained about broken windows and the presence of insects and other vermin in the prison. Rather than punitive, the conditions about which plaintiff complained appear to rise to no more than "a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n. 21; see also *Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir.1996)(affirming dismissal of conditions of confinement claim as frivolous); *Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999).

Plaintiff complained about the clothing provided upon his entry into custody. Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, ... medical care," and hygiene. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir.1999). Once again, plaintiff has not demonstrated that the complained of circumstances are the result of a punitive policy; his argument raises no more than a *de minimis* imposition and therefore is frivolous. *Bell*, 441 U.S. at 539 n. 21

### 3. Medical Care

Plaintiff also complains about the denial of appropriate or adequate medical care. As noted above, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Detainees, by virtue of their status, are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). Nonetheless, when, as here, a pretrial detainee brings medical care claims which are directed toward particular incidents, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of*

*Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.* To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

Thus, in order to establish an actionable constitutional violation plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

To the extent that the pleadings allege negligence or even malpractice on the part of the defendants with regard to his medical care claim, plaintiff fails to state a claim for which relief may be granted since deliberate indifference is not equivalent to negligence. Put simply, deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate

indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

### 4. Access to Courts

Plaintiff claims that he was twice denied his Constitutional right of access to the Courts. He first alleged that the defendants denied him access to courts with regard to his attempts to prepare his defense of pending criminal charges; next, he complained that he was unable to initiate discovery in the instant suit.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73

11

F.3d 1322, 1329 (5th Cir.1996).  Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited as a result of the defendants' failure to allow him access to the prison law library.

Furthermore, in order to state a claim based on the denial of a prisoner's access to the courts, a plaintiff must show actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).   He must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

Plaintiff has not shown that he was prejudiced in his ability to litigate this law suit or any other with respect to the alleged fault of the defendants.  Further, with regard to his claim that he has been denied the opportunity to prepare for the trial of his pending criminal charges, he likewise fails to state a claim for which relief may be granted.  In *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every *pro-se* motion he wants to file in addition to his attorney's motions. In *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that even an inmate, such as plaintiff,  who rejected the assistance of his court-appointed attorney "had no constitutional right to access a law library in preparing the *pro-se* defense of his criminal trial." In other words, providing, or even offering to provide, legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. *See Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)

(relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491. He is thus not constitutionally entitled to access the law library with regard to the pending charges. Further, even if he is entitled to such access, he has not shown prejudice resulting from the failure of the defendants to permit access on only two occasions.

Further, plaintiff cannot demonstrate prejudice with regard to his claim that he was not permitted to prepare proper discovery motions in the instant matter. Plaintiff's civil rights complaint has remained on initial review pursuant to 28 U.S.C. §1915 and service of process has not been ordered. Therefore, plaintiff was not entitled to engage in discovery and any claim that such a right was denied by the defendants is patently frivolous.

Plaintiff has not been denied access to the courts either with regard to the litigation of this *pro se* civil rights complaint or with regard to his pending criminal charges. Plaintiff's access to courts claim is frivolous and fails to state a claim for which relief may be granted.

*5. Retaliation*

Finally, plaintiff claims that his transfer to RPDC was an act of retaliation. To prevail on the claim for retaliation under Section 1983, a civil rights plaintiff must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d

299, 310 (5th Cir.1999). Here, plaintiff has alleged, in conclusory fashion, that his transfer to RBDC was an act of retaliation triggered by the filing of the instant complaint.

With regard to this claim, plaintiff failed to establish causation as required by the jurisprudence. As noted above, plaintiff must allege facts to demonstrate that "but for" the exercise of his constitutional right, the alleged retaliatory adverse act – his transfer to another prison – would not have occurred. Indeed, the pleadings themselves establish a more plausible explanation for the transfer. Plaintiff was dissatisfied with the conditions of confinement at the MPJ. He complained about those conditions. He was transferred to another facility and presumably the conditions at that facility were more wholesome given the fact that plaintiff did not complain about conditions at the RPDC.

Further, broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Plaintiff was lawfully incarcerated – he was detained pending trial on unspecified charges. He had no constitutional liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532,

2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000). His retaliation claim is frivolous.

### *6. Medical Examination*

As previously noted, during the pendency of this suit plaintiff filed a motion for a medical examination. The undersigned denied his motion and plaintiff appealed this denial to the Court. As of this date, the appeal has not yet been decided. However, in addition to the reasons provided by the undersigned, it should now be noted that plaintiff has been released from custody and therefore any claim for injunctive relief is now moot.

### *Conclusion and Recommendation*

Therefore

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

**(14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 16, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE